The plaintiff in this case, Ambrosio Longoria, suffered relatively minor injuries in a truck accident in southwest Texas. The jury awarded him $1 million in future pain damages and $1.1 million in future physical impairment damages, as well as about $300,000 in past and future mental anguish. We think that those judgments are excessive and not supported by the trial evidence and therefore those particular judgments, they're not the other ones that the jury awarded should be reversed. My plan is to start with our maximum recovery rule analysis and then move on to sort of the alternative under Texas law if we need to. Let me ask about that threshold issue of maximum recovery. As I read it, it's a federal judge-made rule, federal common law essentially. In light of Gasparini, why in this Erie case doesn't state law provide the proper standard overview and mechanisms for seeing if it was excessive? So I've got three answers to that. First, of course, my opponent hasn't raised that issue. So I think that to the extent this court wants to hold that the maximum recovery rule no longer applies to adversity cases, perhaps it might be better to wait for a case where that defense has been raised. Number two, I would say that Gasparini, of course, doesn't specifically apply to the maximum recovery rule. And this court's later case, let me just get the name, Foradori, doesn't say we now overrule the maximum recovery rule. So in terms of a rule of order in this situation, I think the maximum recovery rule is still how you analyze excessiveness in this circuit, even in Erie cases. And my evidence for that is that Judge King did that in Learmonth, which is a 2011 case post-Gasparini. But isn't there a footnote there to your, maybe you're saying the same thing's true here, that says this wasn't really argued, so we're going to sort of look at it both ways? Yeah. And I think the same is true here. I think you can assume without deciding in this case. Is there much difference between maximum recovery and Texas's standard that says you can look to comparable cases? No. And that's my third answer, which is that I think you get to the same place. Texas says that you can do, first you look to the trial evidence, and also you look to other approved judgments. That's what the court said in Lane v. Martinez, which we cite in our brief. And that's exactly what the maximum recovery rule does. It looks to other approved judgments to make sure that the judgment in this case isn't grossly excessive. And I think that's consistent, actually, with what Justice Ginsburg was trying to get at in Gasparini itself. She says the purpose of her judgment there is to make sure that you don't get more in federal court than you do in the same jurisdiction, state courts. And that's exactly what we're trying to do here. We're trying to avoid that forum shopping problem where plaintiffs may want to get into federal court to avoid the review of the Texas courts of appeals. And I think this judgment would probably be reversed at a Texas court of appeal for being excessive or not supported by the evidence. And I think that same result should pertain in federal court. Might there be a difference, though, once you, let's say you're assuming there is an excessive award, the federal rule would say, well, you look at the biggest and give 150 percent. What's the rule in Texas once you've determined it's excessive for finding out what the new remediator number should be? It's much squishier under Texas. The Texas cases I found where they do do remediators or insufficient evidence, the court just sort of says something based on its belief of what the right answer is. And then they compare it to other similar verdicts, you know, factually similar, just like under the maximum recovery rule. Well, excessive verdicts on reversal at times lead to new trials. Is that the relief that you're seeking? As a first, you know, threshold issue, yes, I seek a new trial with respect to those damages. But the court has discretion to order a remediator to either the maximum recovery rule number or some other number that the court imposes in its discretion. But of course, we would accept a remand for a new trial with respect to those damages. On the future impairment, let me just talk a little bit about the record here and how it compares to other cases that we have in our briefs. The record is pretty clear, and I'm trying to be as candid as I can with respect to what my opponent says happened to Mr. Longoria. I think what it says is with respect to future impairment, he has back pain that causes him to wake up every two days or so, and so he can't get a full night's sleep occasionally. And he has some limits in how he can play with his grandchildren, the kinds of activities he can do, roller coasters, that kind of thing. And he can't do his lawn work anymore. His wife does the lawn work now, and he used to enjoy doing that. So that's what we've got in terms of the future physical impairment. And if you look at Plainview Motels, that's the case where the doctor is hit by a bunch of mirrors, and he's injured fairly severely to begin with, but then he recovers. His future impairment is he can't get a good night's sleep every night. He has sharp pains, so he keeps waking up. And he has a restricted ability to run, do triathlons, and play with his children. So to me, those two cases are extremely similar, and whether we're looking at it as a maximum recovery rule issue or under Texas law. And the judgment in that case was $25,000 for future physical impairment. And here we've got a million dollars. And my friend on the other side has not come up with a case where someone awarded $500,000 with these kind of facts, or a million dollars, or indeed anything more than the two cases I presented. And I know his argument is we forfeited this argument, but I think he could have also gone and presented you cases that help him with respect to the maximum recovery rule, or with respect to Texas insufficiency of the evidence. And he doesn't have them, and I think it's because they don't exist. I just don't think there are cases like this in Texas where such a large verdict is affirmed with this little injury. With respect to pain, again, the record evidence is very modest with respect to Mr. Longoria's pain. He has neck and back pain, he takes ibuprofen, and he has to stretch when he's working. He's a truck driver, so he stretches in the morning to warm up his body, and then he stretches in the afternoon after he's been driving for four or five hours. And if you compare that to the Brookshire grocery case, that's the one where a woman is hit by this sort of part in a grocery store, she says she has constant pain, she has a back surgery, just like Mr. Longoria, and she continues to experience pain in the years after the back surgery, but it's not that bad. And what the Court of Appeals says is, well, this isn't a ton of evidence, but given the fact that it's a relatively modest award, it's $25,000, we think we can affirm. And I think, again, here we don't have a relatively modest award. We have a gigantic award given the amount of physical injury in Mr. Longoria's. I don't see you making a separate argument about the presentation of this issue to the jury, which is disfavored strongly in the Fifth Circuit. Have you made that argument, that the guidance to the jury given by counsel, that you ought to think of this in terms of so much per hour for pain, is actually not an appropriate way to advise the jury? We did not object to the closing argument, and we're not making an argument that it was an improper closing argument. But what we are saying is that it isn't evidence that can support a $1.1 million, excuse me, a $1 million future pain analysis. So I think it's a slightly different argument we're making, but we're not making the objection to the argument kind of argument. All right. Can I ask you a question about the preservation issue? Yes. It's not the one that's brief. The one that's brief that went back and forth is about whether the Federal rule was raised. But I'm looking at the motion for a new trial. I don't think you filed it. It was trial counsel. And it has two sections. It first says A. It first argues in A that for mental anguish in the future and physical impairment in the future, there's no evidence at all. That should just be wiped clean. Then it has section B, challenging awards as excessive, and it talks about physical pain in the future, so you preserve that. And then physical impairment in the past. But what I don't see in the challenge to excessiveness is physical impairment in the future. So putting aside this issue of whether we can look at the Federal rule, is it raised at all that the future impairment was excessive? Let me try to answer that in two ways. One, you can forfeit forfeiture, and I think my friend hasn't made that argument, so I don't think that is presented. Number two, of course I would prefer had we made it the way you're saying. Had we made both future pain and future physical impairment in both sections. But I think it's good enough. Because when you're talking about insufficiency of the evidence, I think the border between those two things isn't that strong. You know, awards are too big because they're insufficient, the evidence is insufficient, or they should be wiped out because the evidence is insufficient. I don't think that's a dispositive difference in how we made it. So it's not the best way, perhaps, that I've presented the argument, but I think it survives. Your point is if your argument should have been zero, then anything above that, it's sort of encompassed within that argument that anything above that was excessive. Right. So that's my argument. Like I said, I'd rather it was done more comprehensively than it wasn't at the time. If I could talk a little bit about this hourly analysis that Judge Salford presented, I do want to make one point about it, and it's sort of remarkable to me that the numbers change from what they tell the trial court, they tell the jury that, look, you should award him $35 an hour for certain types of pain, the more intense pain, and $17 for the other types of pain. And then in their appellate briefs, they say, well, really what you should do is $16 an hour for two hours a day for the stretching, and then $16 an hour for eight hours a day for the sort of ambient pain that Mr. Longoria experiences. And I think that that change just demonstrates how unmoored from the evidence the pain judgment is. The fact that they're forced to create this structure on which to hang the $1 million pain judgment, to me, just demonstrates that there's nothing else, that there's only these very modest pains that do not support a judgment this large under Texas law. Let me just conclude by talking about the mental anguish damages. The Texas courts are very clear that mental anguish should only be awarded if there's not just depression or sadness or that kind of thing, but it has to penetrate to your daily life. There has to be a disruption to your routine. So the prototypical example of that is a mother who might have lost her child or something like that, and she's unable to go outside, she's unable to participate in her social life. And there's got to be that kind of evidence. That's what the Texas Supreme Court says in, I always mispronounce it, but S-A-E-N-Z, where they vacate an award for mental anguish. Here and again, I want to be as candid as possible with respect to the facts. I think the mental anguish evidence is that Mr. Longoria was scared of surgery and later he feels, quote unquote, useless. That's exactly the kind of generalized depression or sadness that does not suffice under Texas law for mental anguish damages. So I think that those damages should be reversed entirely, no matter what you do with respect to the rest of the case. The maximum recovery rule, I'm sort of interested in it. See, isn't it more pro-plaintiff than Texas law? Because as I understand it, the plaintiff, and I know you don't think it's out there in this case, but just needs to show one verdict and it's okay. One comparable verdict. And even 150% of that's okay. Whereas the Texas is more holistic. It seems to me, Texas, you could say, well, yeah, there's one big verdict out there, but the mainstream verdict is $25,000. So you, I mean, isn't Texas actually worse for a plaintiff, even though you're arguing for the federal rule? In general, I think you're right. Texas is probably worse for the plaintiff. But in this case, it happens that with these kind of injuries, there just isn't a case out there. And you said verdict. I probably, you agree with me that it needs to be a firm decision of an appellate court or maybe a reasoned opinion of a district court, but I don't think just the verdict would do it. You're saying that comes from Texas law, that sort of analysis, or from federal law? No, that's the federal maximum recovery rule. But in Texas, if you look at Sunbridge Health or Lane v. Martinez, they're both cited in the briefs. The courts there both say it's okay to go analyze other affirmed verdicts in order to see whether the thing you're dealing with is too much or not. And I think that's just the general common sense understanding of trying to get hold of these non-economic damages that are very hard to review. If the board doesn't have anything further, I will sit down. All right, counsel. Thank you. Your Honor, may it please the Court, Lee Folsom on behalf of the appellee Ambrosio Longoria. A party cannot press on appeal arguments it did not give the trial judge an opportunity to rule on. In our system, the trial is the big show and the appeal is what the reviewer does later. It's the backwater? I'm sorry? This Court is the backwater and the main show is the district court? I don't want to characterize this Court as standing out in the hallway on the phone back to the home office. Proceed. You don't need to— The analogy is not perfect. But the Court has held most stridently in FDIC v. Mihalis that unless the argument has been pressed to the trial court below in a manner strong enough for the trial court to address it and rule on it, that argument will not come up on appeal. And in this case, the plaintiffs never gave Judge Marmolejo the opportunity to rule on whether or not the maximum recovery rule applied. They never suggested to Judge Marmolejo that there should be a remititure instead of simply a new trial. They never suggested an amount of a remititure that Judge Marmolejo should impose. Their only argument was that damages were so high that they shocked the conscience and that there were no facts that would support a future pain award. On that basis, the Court can review—should review—this case under the typical standards that it would use, shock the conscience standard, and apply the Texas standard for the substance of the law as it goes through its procedural review. As I read the maximum recovery cases, there's two different ways it's used in our Court. It's inconsistent. Sometimes it's used, I think the way you're saying, they're trying to use it here at the outset to say, is it excessive? Do we have to take away that million bucks? But then other cases, and I think the older cases, there's a Judge Rubin opinion that gets into this, he says you use it at the second stage, where once you've determined something's excessive and can't stand, then you use the maximum recovery to say, well, what should the remititure be? And so, if that's the way it works, why is it a problem that they didn't raise it below? Because it's really just a Court rule to say, okay, you know, we can order a new trial or we can give the remititure option at this amount, I mean, it's just a matter of Court discretion. I agree, Judge Costa, and the way that it developed—the way that it developed from the beginning with Judge Rubin in the, I think I'm pronouncing it right, Gorsolitz opinion, he was simply adopting what Professor Miller had suggested, which is that the only way that remititure is consistent with the Seventh Amendment is if you impose a remititure, you can reduce it only to the maximum amount the jury could have awarded. And from that point, the Court would go forth, and typically you see this in the slew of air crash cases that came about in the early 1980s, the Court would look at other cases, would look at the damages awarded in this case, and say, based on our consideration of what the maximum award for a similar injury was in Louisiana, we think that a reasonable jury in this case could have awarded only X amount of dollars. But to be sure that we are not stepping on the jury's feet, we are going to add another In the Douglas case, the Court decided that it was going to treat the maximum recovery rule more as a rule of thumb as to when it was going to look to see whether or not the recovery was excessive. And in that case, there's a footnote that says, the maximum recovery rule does not apply unless the recovery is 133% of a previous recovery. And that's been a guideline that the Court has followed. It has been followed inconsistently since then, but if you follow the line of cases through, the most recent, I don't think that Delahousset is the most recent one, it's the most recent one that addresses it in depth. You will see that the Court is using it as a guideline to determine whether to delve deeper into the question of whether or not damages are excessive. And then it is simply using the one-third number that was used in the Eastern Airlines crash case and other cases as a benchmark for where it's going to give that margin to make sure that the Seventh Amendment is still being honored. That being said, the standard that the Court uses to review this case does not need to take much into account. The evidence at trial was largely uncontested. There was no evidence to contradict Mr. Longoria's assertion of pain. There was no evidence introduced that he was lying about the changes in his lifestyle. There was no evidence introduced that he actually did need to take two hours out of his day every day to ameliorate the pain that he was suffering. There was no evidence that his time was worth something different than the amount that was suggested at trial. No one asked Mr. Longoria if he had made any alternate plans for playing with his grandchildren. If he had shifted from walks in the park to board games at home. If he had shifted from riding roller coasters to strolling through museums. No one asked if he had asked for more work hours to see if maybe he did not value his time at home as much as he valued his time at work. No one asked if those hours were available. There were no controverting witnesses. There were no private investigators who came in to say that this is my videotape of Mr. Longoria running the Houston Marathon last January. But I think they're saying, given all the truth of all his testimony, it doesn't support a million bucks. Wasn't he taking, wouldn't an Advil get rid of most of his pain? He took an Advil to, his testimony is that his stretches ameliorated the pain, but the pain was permanent. It never went away. And then occasionally the pain would get to the point where he would take an Advil to bring it back down to another level. And that's why the calculation that gets to a million dollars in this case is appropriate. When you say calculation, what do you mean by calculation? You mean your unit of time analysis? It is a unit of time analysis, Your Honor. You said it is or is not? It was, it was argued to the jury as if it were a unit of time analysis. And is the calculation work? I haven't done a million dollars. Based on your argument, does that get to a million dollars? The argument that counsel made? No. And, Your Honor, we addressed that in our brief with the example. It was suggested that we had to change our story from the $17 or $35 that was argued at trial. That is not the case. In our brief, we posit the $16 an hour number to round down from what Mr. Longoria was making. And then we look to the two hours a day that it is uncontested he has to take out of his day simply to make the pain manageable. And then we assume he says he's having trouble with his sleep every other night. He sleeps eight hours a day. That's four hours. And if the value of his time away from work is the same as the value of his time at work, and under basic economics we can assume it is because if his time away was less valuable, he'd be working more. We can look and see those hours a day are worth at least $32 for the two hours he has to stretch and another $64 for the hours that he's not able to sleep. What do we do with case law in this circuit, including from this year, that says that kind of calculation distorts the analysis by the jury and is reversible error if properly preserved, perhaps. But if that's the case, and this was never objected to, it's not even been raised on the Hill, I still wonder how we could use that kind of analysis that you're supporting even here when we said that is distortive and is irrelevant to what the jury ought to be doing. And it can be, Your Honor, if the number is simply chosen out of thin air. In this case, it was tied to a demonstrable value that Mr. Longoria put on his time. And unusually with most cases, it was tied to a particular amount of time that it is uncontested he has to take out of his day to address. Trial counsel did not object to that argument. Trial counsel did not request a cautionary instruction in the charge. Trial counsel did not complain about this. All right. I understand the preservation issue, but the flip side is you need evidence to support this verdict, subject to our review standard. And I'm just wondering how that sort of calculation, since it is rejected by this court, could be that evidence. Well, Your Honor, that calculation has been rejected in a golden rule type standard. And in this case, the jury was not asked to do unto Mr. Longoria as you would have Mr. Longoria do unto you with this amount. In this case, they took his salary, broke it down into an hourly wage. And this case is unusual in that there is an affirmatively identifiable block of time. The two hours? The two hours. And then he testified that he wasn't able to sleep every other night. Well, the jury has discretion to look at the uncontested evidence and decide whether or not that amount of bother is worth the same amount of value that he puts on his work hours. And in this case, they did that. Isn't that even — but that's impairment, right? If you're having to divert your time, that's not pain. I mean, there is some overlap, but it seems to me, oh, I have to go to the doctor for an hour. I mean, that's impairing your life. That's not pain unless you also — you're trying to sort of merge the two, I guess. Correct. Well, the evidence supports both quite frequently. In the Mungia case that both of the parties cite in their briefs, that's 484 Southwest Third 503, the court specifically rejects an argument that the same complaints that are impairing the plaintiff's life cannot be used to support an award that they are paining his life. And the way that I like to think of it is everyone has a baseline, and the award for pain and suffering is to compensate you for how low the injury pushes you below your baseline. And the award for physical impairment is to compensate you for the things that can no longer raise you above the baseline. And in some cases, those are the same thing. If someone suffered a closed head injury that resulted in two hours of migraines a day, the pain of the migraine is compensable because that hurts. And the two hours a day that the person has to take out of their day to lay down and make the migraine go away is also compensable because they can't be working, they can't be out running triathlons. And that's why the lack of controverting evidence in this case is important. There was nothing to show that there was any other value to be put on Mr. Longoria's time other than the evidence of what his work time was worth to him. But it is post-surgery. I mean, in the grand scheme of these personal injury cases, it seems to be minor back pain post-surgery. I mean, there's no comparable pain and suffering verdicts that I've seen that you've pointed us to. Well, Your Honor, we have the two verdicts that were in the addendum that the court did not accept, which is another reason why this argument should have been presented to the trial court, where Judge Marmolejo would have been able to review the verdicts. Were they affirmed on appeal? They were not appealed. We'll address his point that says you have to have affirmed verdicts. That is not correct. In LeBron, the court said that it was going to consider only opinions on appeal, only reported opinions. And in that case, it said we're not going to look at attorney affidavits, we're not going to look at the verdict search. At the time, it was the blue pages. The best way to read that case, first of all, it has to be read consistently with Douglas, where the court specifically said it was looking at an earlier district court case and that an argument that it should not look at district court cases would be frivolous because the rule is to look at all similar cases. What if there's a $10 million pain and suffering verdict and both sides know there's no way the state appeals court is going to uphold this, let's settle it for a tenth of that or whatever. I mean, why should that be used when everyone sort of knew it was not going to be a sustained verdict? That goes to the discretion of the trial judge to decide whether or not the verdict in her case is excessive. The trial judge gets to look at that information. The trial judge in the first case or the trial judge in this case looking at them? The trial judge in this case who's trying to find comparable cases because that's the test is whether or not they're comparable. And we know that district court cases and unreported cases are considered to be comparable because in De La Jose, the same judge of this court who wrote the opinion in LeBron wrote an opinion looking to an unpublished district court case as a comparable case for the purpose of fixing the maximum amount that a reasonable jury might award. It's been complained that lots of times you can't just go on verdict sheets, you can't just go on affidavits. That's true. I agree with that. And that's why most trial judges are going to discount that in their analysis as to whether or not the verdict is excessive. But in cases where you have a written opinion from a district court, and Texas is unusual in that Texas trial judges rarely write opinions, but they do occasionally. And judges from Louisiana and judges from Mississippi write opinions analyzing their verdicts and their judgments, as do judges in other states whose law comes before this court in diversity cases. It would be unreasonable to reject that sort of analysis to see whether or not there are comparable cases simply because they were chosen not to be submitted to West. If the opinion is thin, if it comes from a Texas trial court where there's nothing but a jury charge and a judgment, the court can weigh that. Courts should weigh that. That's the job of trial courts. They weigh competing evidence all the time. And this court has the discretion to look and say, the judge considered nothing but these 14 reports from the blue sheets. That doesn't tell us what was appealed. That doesn't tell us what these other problems were. That doesn't tell us the full extent of the injuries. That doesn't tell us, you know, is he unable to play baseball? Is he unable to run triathlons? That just gives us pure numbers. And the trial judge abused her discretion in relying on nothing but that. But again, that's not what we have here. Judge Marmolejo was asked only to find that the amount of damages awarded shocked her conscience and to find that there was no evidence to support two classes of that. She did not abuse her discretion in denying that. Because the only evidence that had been presented was evidence that supports her conclusion that Mr. Longore was injured. He has permanent injuries. The permanent injuries will continue to pain him for the rest of his life. And restricting his activities for the rest of his life. Trial counsel takes a risk when it doesn't cross-examine a witness on the extent of the changes to his life. Trial counsel takes a risk when it doesn't ask for a remittiture and peg it to a number. Trial counsel takes a risk when it chooses to focus on liability and the scope of the physical injuries that he suffered, which is what happened in this case, where trial counsel argued that the injuries were pre-existing even if the plaintiff were liable for the crash and provided no alternative to the economic argument that Mr. Longore had made. Simply suggested numbers to the jury that might be appropriate to plug in. And given that, we ask that the court find that Judge Marmolejo did not abuse her discretion and ask the court to affirm it. Thank you, Your Honors. A few quick points on rebuttal. I think my opponent's argument fundamentally is that there is no review of a jury verdict. What he says is that we didn't object to what Mr. Longore has said about his life and therefore we lost our chance to get any kind of serious review of the amounts of these jury verdicts. And I think that's just incorrect as a matter of Texas or federal law. I think we get some kind of review. Of course the jury has some discretion. If the jury had said Mr. Longore gets $150,000 for future pain and impairment, I don't know that we'd be here. But where there's a million-dollar verdict on each of those, a $2 million verdict, I think this court can probe a little bit into that evidence and make sure that the evidence supports it. Looking again at your new trial motion, which I already asked you about how it divided up the issues, but opposing counsel picked up on the fact that in the excessive damages challenge, the standard you invoked, again the trial counsel invoked, is the award so excessive that it shocks the judicial conscience? It quotes it a couple times. Why aren't you stuck with that standard? I think that standard is just a formulation of the excessiveness standard. Courts, when they're analyzing excessiveness, say a lot of things. Does it shock the conscience? Does it exceed what has ever been done before? I think the trial counsel there was just trying to use the magic words that he thought would invoke excessiveness analysis. And I think if you look at the heading, I think he says it's excessive. I think it gets close enough to preserve the excessiveness challenge. But we weren't there in court. I mean, this gets to why you preserve in the first place. We weren't there. We didn't hear it all. We didn't see the plaintiff. And if we're having to use a different standard than the district court, that seems the district court gets first crack because it saw this whole trial. I think the district court was given the opportunity to analyze that question. Maybe it wasn't done in the perfect way. But she was asked when the verdict came in, look, this is too big. And then she said, no, I think it's fine, by denying the motion for new trial. Of course, on appeal, the arguments have become a little more elaborate, but I think that happens all the time. And I don't know that it's forfeiture just because all the right cases weren't in the motion for new trial. I do want to talk briefly about the affirmed opinions colloquy you were having with opposing counsel. Someone was having. About whether it's okay to look at these verdicts, just the bare verdict form. I was thinking about that this morning, and there's these line of cases, about 36, where as a joke, I think, the court says, you know, judges are not dogs or pigs. They can't be sent to go in the forest looking for truffles. They have to be given guidance when there's a complaint. You have to tell the judge what your problem is with the other side's action. And I think that's the case here. Judges can't just be given a verdict form and told, well, you go figure out what exactly happened in this case. What you need is an affirmed opinion or a reported opinion. So that the reviewing court, this court, can look at the facts and compare it under the maximum recovery rule to the case that we have in hand. Just the bare verdict doesn't do anything for you. It just says a number. It doesn't say what happened in the case or, you know, how bad the injuries were. My friend attacked us several times for not disputing what Mr. Longoria said about his life. That's right. We don't dispute it. We take everything that's true that he said, that he's suffering these pains, and we just don't think it's enough for $1 million in future impairment. And my last point with respect to In re Dupuy, which Judge Southwick was talking about, as you pointed out, the reason why these kind of calculations per hour are bad is because they lead to bad jury verdicts like this one. And so it's not a matter of whether we object to the closing argument or not. It's does that kind of suggestion to the jury lead them in the wrong way? And we think that it does. Fundamentally, this is the largest jury verdict for this kind of back pain, I think, ever in the Fifth Circuit. I have not found any case that looks like this. If you affirm this verdict as it stands, it's going to be used as the benchmark for these kind of cases in future maximum recovery rule or damages excessive misreview. I think it would be wise to review it carefully and remand for a new trial on damages. Thank you very much. All right, counsel. Thank you both for bringing this case to us and helping us understand what each.